IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00121-WYD-KLM

MIKEAL GLENN STINE,

      Plaintiff,

v.

UNITED STATES OF AMERICA,
STEVEN NAFZIGER, M.D., and
RON WILEY, Warden,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE AND
## ORDER STRIKING DOCKET NOS. 44, 113, AND 122
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

      This matter is before the Court on Defendants' Motion for Sanctions [Docket No.

139; Filed November 1, 2007] ("Motion for Sanctions).  Although Plaintiff's case is now

closed pursuant to Fed. R. Civ. P. 41(a), the Court retained jurisdiction of the matter to rule

on the Motion for Sanctions.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398

(1990) (holding that Plaintiff's "voluntary dismissal did not divest the District Court of

jurisdiction to consider [Defendants'] Rule 11 motion").   Pursuant to 28 U.S.C. §

636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1C, the matter has been referred to this Court

for recommendation.  The Court has reviewed the relevant pleadings and conducted an

evidentiary hearing on the Motion for Sanctions.   As such, the matter is ripe for a

determination.  For the reasons set forth below, the Court recommends that the dismissal

of this action be amended to reflect that it is **DISMISSED WITH PREJUDICE** pursuant to

Fed. R. Civ. P. 11 and 28 U.S.C. § 1915(e)(2)(B)(i) due to Plaintiff's malicious prosecution of his case. I further recommend that this dismissal be treated as at least Plaintiff's "third strike" pursuant to 28 U.S.C. § 1915(g).

The time has come for the Court to take a stand against Plaintiff's contumacious behavior. His frivolous filings alone warrant severe sanction due to the unnecessary burden Plaintiff has placed on the Court and defense counsel. But this Recommendation is further justified by the malicious filings containing outrageous and wholly unsupportable allegations that Plaintiff has lodged in this case (as well as other cases) regarding defense counsel and a former judicial officer of this Court. Plaintiff's false statements regarding Assistant United States Attorney Amy Padden and former Magistrate Judge O. Edward Schlatter to the Court, to elected public officials, to executive agencies, to bar associations, and to various others is simply unconscionable. In addition, the Court finds that Plaintiff has made untruthful statements to the Court. Plaintiff should be held accountable for his conduct.

## I. PROCEDURAL BACKGROUND

By way of providing context to the Court's Recommendation, the Court provides the following procedural background regarding Plaintiff's case. Plaintiff, who is proceeding *pro se*, is a prisoner at the federal government's maximum-security prison, ADX Florence ("ADX"). Plaintiff filed the present action on January 8, 2007 and moved to proceed *in forma pauperis* [Docket No. 1]. The request was granted, and Plaintiff was ordered to make payments toward his filing fee each month or show cause why he cannot [Docket No. 5]. On October 30, 2007, the Court issued an Order to Show Cause why Plaintiff's case

should not be dismissed for his failure to make payments toward his filing fee [Docket No. 136]. Plaintiff failed to remedy his nonpayment or show cause why he could not pay. Therefore, the Court recommended that Plaintiff's case be dismissed on November 27, 2007 [Docket No. 153]. At that time, Defendants' Motion for Sanctions was also pending, and Plaintiff failed to respond to the Motion within the deadline set by the Local Rules. The Court scheduled a hearing regarding the Motion for Sanctions [Docket No. 166]. On November 2, 2007, Defendants also filed a Motion to Dismiss [Docket No. 141] to which Plaintiff failed to respond. The Court ordered Plaintiff to respond to the Motion to Dismiss by January 31, 2008 [Docket No. 167].

Rather than defend against the Court's Recommendation to Dismiss, Defendants' Motion to Dismiss and Defendants' Motion for Sanctions, on January 2, 2008, Plaintiff moved to dismiss his case on the grounds that he lacks the mental capacity to continue to prosecute it [Docket No. 168].[1] Before Defendants responded, the District Court granted

---

[1] The Court seriously questions Plaintiff's assertion that he lacks the mental capacity to litigate his case. The Court takes judicial notice that Plaintiff is currently litigating *five* other cases in this District: (1) Civil Action No. 07-cv-00799-WYD-KLM; (2) Civil Action No. 07-cv-01250-WYD-KMT; (3) Civil Action No. 07-cv-01839-WYD-KLM; (4) Civil Action No. 07-cv-02203-WYD-KLM; and (5) Civil Action No. 08-cv-00164-BNB. *See Vibe Techs., LLC v. Suddath*, No. 06-cv-00812-LTB-MEH, 2006 WL 3404811, at *5 n.2 (D. Colo. Nov. 22, 2006) (unpublished opinion) ("This Court may take judicial notice of court documents and matters of public record."). A sixth case, Civil Action No. 08-cv-00298-ZLW, which was filed after Plaintiff voluntarily dismissed the present action, was recently dismissed by District Court Judge Zita L. Weinshienk [Docket No. 7] and is now on appeal to the Tenth Circuit [Docket No. 9]. Indeed, after Plaintiff claimed to lack the mental ability to proceed with the present action, he filed two new cases, one Tenth Circuit appeal, countless motions in his other pending cases, oppositions to several dispositive motions, and attended hearings in this case and in Civil Action No. 07-cv-00799-WYD-KLM where he presented evidence and made arguments, all without suggestion that he was suffering from mental deficiencies. Plaintiff's cavalier assertion regarding his mental capacity on the eve of his case's

Plaintiff's request to voluntarily dismiss his case without prejudice [Docket No. 169]. On

January 8, 2008, Defendants sought to have the Court rule on their Motion for Sanctions,

arguing that "Plaintiff should not be able to avoid sanctions by dismissing his lawsuit,

without prejudice . . . ." Motion to Reset Hearing at 3-4 [Docket No. 170]. The hearing on

the Motion for Sanctions was held on February 7, 2008 [Docket No. 172]. Although

Plaintiff initially objected to the Court holding a hearing,[2] Plaintiff stated on the record,

---

dismissal for his failure to pay filing fees and this Court's review of Defendants' Motion for Sanctions and Motion to Dismiss is belied by his conduct in this and other cases and negatively impacts his credibility.

[2] Plaintiff challenged the Court's authority to hold a hearing on the Motion for Sanctions after his cased was closed [Docket No. 174; Filed January 28, 2008]. He argued that (1) the Court did not have jurisdiction; (2) he threw away his case files after the District Court dismissed his case; (3) he has a mental disability which does not allow him to recall events or convey his thoughts; and (4) a medical doctor should be appointed "to determine if Plaintiff is mentally capable to defend his case." *Id.* at 2. Defendants filed a response and argued that the Court retains jurisdiction over Rule 11 issues even after a case is voluntarily dismissed. Response to Objections at 5-7 [Docket No. 175]. They also argued that Plaintiff's alleged mental disability should be viewed critically by the Court. *Id.* at 7-9. The District Court overruled Plaintiff's objections on February 11, 2008 [Docket No. 177], but noted that this Court could address Plaintiff's assertions regarding his mental capacity in its Recommendation on the Motion for Sanctions. The Court reiterates its assessment in footnote 1 that given Plaintiff's pleadings as well as his ability to present evidence and testimony at the evidentiary hearing, the Court does not find Plaintiff's assertions about his mental capacity to be credible. The District Court also ordered that Plaintiff be provided with the Motion for Sanctions and related pleadings in advance of the hearing [Docket No. 177 at 2]. While the District Court's Order was not issued until *after* the hearing and was not capable of being carried out, Plaintiff was not prejudiced as a result. Plaintiff informed the Court at the hearing that he had received a copy of the Motion for Sanctions (which the Court notes has the objectionable pleadings filed by Plaintiff attached to it) prior to the hearing. As such, the Court finds that Plaintiff was sufficiently able to prepare for, and defend himself at, the hearing.

"Absolutely, I am glad that the hearing is taking place," and that he was ready to defend himself.[3]

## II.  MOTION FOR SANCTIONS

The purpose of the Motion for Sanctions is to seek punishment of Plaintiff for what Defendants describe as harassment of "undersigned counsel and members of this Court by making false accusations about their integrity and thinly veiled threats against them." Response to Objections at 9 [Docket No. 175].  In support of their Motion for Sanctions, Defendants highlight three pleadings filed by Plaintiff:

(1)     Following the denial of his motion for preliminary injunction by former Magistrate Judge Schlatter, Plaintiff filed a motion to recuse Magistrate Judge Schlatter [Docket No. 44] wherein he stated that he "has been advised that [Magistrate Judge Schlatter] has a personal relationship with defense counsel Amy L. Padden . . . wherefore he is biased and prejudical [sic] towards Plaintiff";

---

[3] After the hearing, the Court gave Plaintiff the opportunity to submit a 10-page written closing argument summarizing the evidence he had presented and making final arguments against the issuance of sanctions.  The Court set the deadline for the argument's submission as February 14, 2008 [Docket No. 176], but Plaintiff submitted a letter asking for more time because he claimed not to have enough paper to draft his closing argument [Docket No. 178].  The Court granted the motion and extended the deadline to February 20, 2008, but noted that no further extensions would be permitted [Docket No. 181].  Plaintiff then submitted a second motion asking the Court to stay its decision until Plaintiff could get more paper, evidence, and counsel [Docket 183].  The Court denied the motion [Docket No. 185].  Finally, Plaintiff submitted a third motion asking for a hearing to address Defendants' alleged conduct since the hearing, and claiming new injuries [Docket No. 187].  He again noted that he did not have enough paper.  The Court denied the motion and enjoined Plaintiff from filing further pleadings [Docket No. 190].  The Court notes that between the three motions referenced in this footnote, Plaintiff used nearly 20 sheets of paper.

(2)     Plaintiff filed a letter [Docket No. 113] and claimed that he was going to file a complaint against Ms. Padden for "knowingly allow[ing] perjured testimony" in a different civil case, Civil Action No. 06-cv-02105-WYD-PAC. He also claimed that he was told by a police officer (whom he indicated is "now dead") that "Ms. Padden had more than a professional relationship with Magistrate Schlatter of which affected his Ruling and slated [sic] for Ms. Padden." He claimed that he planned to file complaints against Ms. Padden with the American Bar Association ("ABA"), the Colorado Bar Association, the Office of Professional Responsibility/Office of Inspector General of the Department of Justice ("DOJ"), and the Federal Bureau of Investigation ("FBI"); and

(3)     Plaintiff filed a letter [Docket No. 122] indicating that he had filed complaints with the DOJ, FBI, "a few Senators and Henry Schuster, producer of 60-Minutes" regarding the alleged "more than professional relationship" between former Magistrate Judge Schlatter and Ms. Padden and also claiming that Magistrate Judge Schlatter "would rule against me no matter what in favor of his Mistress, Ms. Padden."

In addition, Defendants point to the following actions and statements of Plaintiff that they argue further constitute sanctionable conduct:

(4)     At a motions hearing where former Magistrate Judge Schlatter denied Plaintiff's motion for preliminary injunction, Plaintiff directed his anger at Ms. Padden and commented, "[S]he just gets whatever she wants, don't she? .

. . You know what, like I said, when I come back and die, I'll come back and haunt her. You know." Motion for Sanctions Exhibit A at 3 [Docket No. 139-2];

(5)     Plaintiff sent a letter to "Ms. Padden; AKA Ms. Hitler." He told her: "Your slick shit and lies have freed [ADX Warden Ron] Wiley so far. But as I stated the Fat Lady has not started to sing yet. I think 60-Minutes will get the message to public and then I'm sure you'll be required to show you did not know, because believe me Wiley and [BOP Special Agent Dianna Krist] their careers are over." *Id.* Exhibit B at 1 [Docket No. 139-3];

(6)     Plaintiff sent a letter to Ms. Padden that stated: "I think your [sic] a Nazi because you state order any documents submitted rejected and not filed, what do you think U.S. is 1945 Russia or Germany." *Id.* Exhibit C at 3 [Docket No. 139-4]. In the same letter, Plaintiff accused Ms. Padden of having "blood on [her] hands" for the alleged death of a family member who was allegedly murdered. *Id.* He also told her that if there was a God, he hoped "one or two of [her] family [would be] killed by gangs." *Id.* Exhibit C at 4. Finally, he threatened: "Tell you what lets [sic] throw out all the laws if your [sic] able to kill someone, kill them or them kill you. Hows [sic] that sound you want to keep your pie but eat it too. Take one or the other." *Id.*;

(7)     Plaintiff filed a voluntary motion to dismiss in case No. 06-cv-02105-WYD-PAC. He sent a copy of the motion to Ms. Padden and made a notation on it which states: "P/S Now Ms. Padden I tried legal way, now what happens

is your fault so remember that, I'll take no more shit from anyone." *Id.* Exhibit D at 1 [Docket No. 139-5];

(8)     Plaintiff sent a letter to a U.S. Senator claiming that Ms. Padden had "sexual relations" with former Magistrate Judge Schlatter and other unidentified judges of the Court. *Id.* Exhibit E at 2 [Docket No. 139-6];

(9)     During a deposition of Plaintiff taken by Ms. Padden, Plaintiff was belligerent and unresponsive, at one point telling Ms. Padden that she needed to "play by the fuckin' rules" and that he would "cuss the judge out." *Id.* Exhibit F at 9:22, 10:2 [Docket No. 139-7]. He also frequently accused Ms. Padden of being a liar. *Id.* at 10:14-:15, 15:8-:9, & 15:11. Although he claimed he could support his accusations about a personal relationship between former Magistrate Judge Schlatter and Ms. Padden with an eight-page letter written by a police officer, he did not produce the letter. *See id.* at 151:4-:23; and

(10)    Defendants also point to Plaintiff's history of litigious behavior, the ten cases, including the present case, he has filed since January 2007 in this District alone (five of which remain pending), the large number of other federal cases he has filed in districts across the country,[4] and the many orders that

---

[4] The Court takes judicial notice of the Complaint filed by Plaintiff in Civil Action No. 08-cv-00298-ZLW, wherein Plaintiff provides his past and current federal lawsuits in what purports to be an exhaustive list [Docket No. 3]. Plaintiff lists a total of twenty-seven (27) past and present federal actions, including six (6) of which are pending, five in this district and one in the Southern District of Texas. In addition to these districts, the Court notes that Plaintiff has filed cases in the District of Arizona, the Western District of Kentucky, the Middle District of Florida, the Eastern District of Florida, the Southern District of Illinois, the Western District of Missouri, and the District of South Carolina. In the same Complaint, Plaintiff also claims to have cases pending in the

judges of this district have entered addressing Plaintiff's malicious, frivolous, and unnecessary filings.[5]  *Id.* at 3-4 [Docket No. 139].

## A.      Plaintiff's Accusations

Plaintiff claims that Ms. Padden presented evidence and testimony that she knew to be false in Civil Action No. 06-cv-2105-WYD-PAC.  Although Plaintiff filed at least one document in the present case accusing Ms. Padden of suborning perjury [Docket No. 113] and also made these statements on the record under oath at the hearing on the Motion for Sanctions, he admitted that none of the so-called inculpatory evidence he possessed (or

---

Southern and Central Districts of California, although he did not provide case numbers for these cases nor did he include them in his list of cases.  The Court takes judicial notice that Plaintiff has at least one pending case in the Central District of California which was filed on February 29, 2008, Civil Action No. 5:08-cv-00251-RGK-MLG.  The Court also notes that Plaintiff tried to file two cases in the Southern District of California, but both were administratively closed for improper venue:  Civil Action No. 08-cv-0111-JLS-AJB and Civil Action No. 08-cv-0215-JM-AJB.  Given the Court's review of Plaintiff's filings across districts, the Court notes that Plaintiff appears to have seven (7) pending cases in total:  five in this district, one in the Southern District of Texas, and one in the Central District of California.  He also has filed one pending appeal in the Tenth Circuit Court of Appeals, Appellate Action No. 08-1078.

[5] Specifically, in Civil Action No. 07-cv-00799-WYD-KLM, Plaintiff was warned about his "malicious attempts by Plaintiff to inundate the Court with unnecessary filings" [Docket No. 22].  In Civil Action No. 07-cv-01248-ZLW, Plaintiff was also cautioned about "his filings [which were] for the most part unnecessary and [were] a malicious attempt to inundate the Court" [Docket No. 12].  More recently, in Civil Action No. 07-cv-01839-WYD-KLM, Plaintiff was warned that if he and his co-Plaintiff continued to inundate the Court with borderline malicious filings, their case would be dismissed [Docket Nos. 26 & 33].  In Civil Action No. 07-cv-00799-WYD-KLM, this Court sanctioned Plaintiff for his continued filing of the same motion by striking the redundant documents and requiring that Plaintiff seek leave of the Court before filing any new motion [Docket No. 106].  In the present case, this Court also warned Plaintiff that "multiple, recurring, resurrected or inconsistent motions will be summarily denied" [Docket No. 128].

had possessed)[6] actually implicated Ms. Padden. The most he was able to claim was that "she should have known about it" or "certainly knew about all this" or "there is no way she couldn't have known" that the testimony she presented through government witnesses was perjured. If, as Plaintiff acknowledged, the documents he supposedly possessed could do no more than *suggest* that Ms. Padden presented perjured testimony, Plaintiff has utterly failed to justify his accusations.

The Court is even more troubled by the outrageous accusations Plaintiff has lodged regarding an alleged affair between Ms. Padden and former Magistrate Judge Schlatter.

---

[6] Plaintiff claimed that much of the evidence he would otherwise present to prove his allegations against Ms. Padden, and thereby justify his assertions in court documents, were destroyed by ADX officials in an August 22, 2008 "shakedown" of his cell block, Delta Unit. He claims that among the documents destroyed were letters and papers proving Ms. Padden's complicity to suborn perjury and her alleged affair with former Magistrate Judge Schlatter. Plaintiff also claims that Ms. Padden ordered the shakedown in an effort to destroy the alleged evidence against her. Plaintiff called several witnesses to testify that ADX officials destroyed Plaintiff's documents on this day. While one witness, inmate Raymond Oechsle, did testify that he saw transparent trash bags full of documents outside Plaintiff's cell, inmate Oechsle testified that he did not see ADX officials remove these documents from Plaintiff's cell, and that other inmates' cells on the same cell block had also been searched. None of Plaintiff's other witnesses were present on Plaintiff's cell block that day, and they could only testify that they remembered Plaintiff complaining to them that certain documents had been removed. By contrast, the ADX officials who performed the shakedown of Plaintiff's cell, Christopher Synsvoll (attorney) and Matthew Clemente (guard), testified under oath that they did not throw away any documents belonging to Plaintiff during the shakedown. They described the purpose of the shakedown as an effort to look for and confiscate contraband, illegal substances, or weapons. *See also* Declaration of Christopher B. Synsvoll [Docket No. 150-4]. Attorney Synsvoll also testified that he conducts routine, but random shakedowns in accordance with Bureau of Prison policies. *See also id.* Although Plaintiff attempted to elicit corroborative testimony from inmate Oechsle that Ms. Padden ordered the shakedown, inmate Oechsle testified that he had never heard of Ms. Padden or that she ordered the shakedown. Indeed, aside from Plaintiff's unsupported assertion, there was no testimony that Ms. Padden ordered the shakedown.

In addition to the filings made by Plaintiff which contain these accusations in this and other cases,[7] Plaintiff also testified under oath about the alleged affair at the evidentiary hearing. The Court summarizes that testimony below.

Plaintiff claimed that he received an eight-page letter from Denver Police Officer Daniel Lee Fischer which referenced an alleged personal relationship between Ms. Padden and former Magistrate Judge Schlatter. However, he testified that the letter was confiscated and destroyed during the August 2007 shakedown of his cell. Nevertheless, at the hearing Plaintiff was able to produce a one-page letter from Mr. Fischer which again indicated that the latter had knowledge of a personal relationship between Ms. Padden and former Magistrate Judge Schlatter. The letter was admitted into evidence and Ms. Padden was able to question Plaintiff about its veracity. The letter is reproduced below in its entirety.

9-7-07

Mike,

How ya doing? Me the same old shit. Work all the time. Got your letter, and yes, I will come for my old Air Force buddy. The entire Denver P.D. knows about Amy Padden and federal Judge Schlatter.

Mike as long as Schlattes [sic] in the picture he will rule for his girl and Mistress Padden, you don't [sic] stand a chance.

Now of course to help you my job is gone . . . She is a U.S. attorney. But she is dirty, now Mike don't [sic] worry that they took last letter, I will come to court for you.

---

[7] The accusations in this case are contained in Docket Nos. 44, 113, and 122. Plaintiff also filed documents containing similar accusations in Civil Actions Nos. 07-cv-00799-WYD-KLM [Docket No. 55]; 07-cv-01250-WYD-KMT [Docket No. 19]; and 07-cv-01839-WYD-KLM [Docket No. 14].

Talk at you later,
Big D

Plaintiff's Exhibit 2. Of significant note is the date of the letter, September **7**, 2007. Plaintiff testified that "Big D" and Mr. Fischer were the same person, Mr. Fischer is a Denver Police Officer, and that Mr. Fischer wrote both the one-page letter and the eight-page letter (which had been allegedly destroyed in the shakedown).[8]

Ms. Padden initially questioned Plaintiff as to whether Mr. Fischer was going to testify on his behalf. Plaintiff responded, "Oh, yeah. Certainly so." He went on to testify that if he could retrieve his address book, he could get Mr. Fischer's address for her. Then Ms. Padden directed Plaintiff's attention to a letter that he filed on the Court's docket dated September **5**, 2007, wherein Plaintiff indicated that "I would state I offered testimony of Police Officer (*now dead*) *prior to his death* testimony that Ms. Padden had more than a professional relationship with Magistrate Schlatter of which affected his ruling and slated [sic] for Ms. Padden." September 5, 2007 Letter at 2 [Docket No. 113] (emphasis added). When confronted with his earlier assertion on the docket that his alleged officer friend, now identified as Mr. Fischer, had died, Plaintiff immediately recanted his testimony that Mr. Fischer was going to testify and stated, "I said he *would have* [come to testify] at the hearing, yes" (emphasis added). Plaintiff then claimed that he believed Mr. Fischer died in early October.

---

[8] At the hearing, Defendants informed the Court that they contacted both the Denver and Aurora Police Departments to inquire about an officer named Daniel Lee Fischer, but neither Department had a record of any employee, past or present, by that name.

Ms. Padden then directed Plaintiff to the date of Plaintiff's letter, September **5**, 2007.

The letter indicates that as of that date, Mr. Fischer was "now dead." Yet, the letter offered

into evidence by Plaintiff purportedly written by Mr. Fischer is dated September **7**, 2007,

two days *after* Plaintiff informed the court that Mr. Fischer had died. Plaintiff had no

explanation for the date discrepancy between the two letters except to say "that's the date

[Mr. Fischer] put on it. Fine. You can run a handwriting analysis." During this portion of

the testimony, Plaintiff appeared to become agitated and began to talk faster. Plaintiff also

suggested that he did not intend for the Clerk to actually docket the September 5, 2007

letter he sent to the Court, so it should not be considered a Court document.[9]

These explanations are untenable. Moreover, given the date discrepancy between

the two letters and Plaintiff's less than credible testimony at the hearing and at his

deposition – e.g., casually saying that Mr. Fischer would testify, then recanting when he

was reminded that Mr. Fischer is supposedly dead, and telling Ms. Padden at his

deposition that she should pursue a line of questioning with someone whom he had

_____

[9] The Court also notes that Plaintiff was deposed by Ms. Padden on October 10, 2007. Motion for Sanctions Exhibit F [Docket No. 139-7]. At the deposition, Ms. Padden questioned Plaintiff about the alleged eight-page letter written by Mr. Fischer. She asked Plaintiff how Mr. Fischer knew her, and Plaintiff responded, "I have no idea. You'd have to ask him." *Id.* at 154:19. Plaintiff made this statement more than one month after he informed the Court that Mr. Fischer had died, yet he testified under oath that Ms. Padden should ask Mr. Fischer how he knew her. Moreover, in the record provided to the Court, when Plaintiff was questioned specifically about the whereabouts of the eight-page letter, Plaintiff did not contend, as he does now, that it had been destroyed in the August 2007 shakedown. *See id.* at 151-54. Plaintiff did testify, however, that as of the date of the deposition, he had received no further communication from Mr. Fischer other than the eight-page letter. *Id.* at 151:1-:6. He did not mention receiving a second one-page letter from Mr. Fischer dated September 7, 2007. At the hearing, he attempted to explain this by contending that the second letter was held by prison officials for sixty days before it was given to him.

already informed the Court was dead – the Court seriously questions whether the September 7, 2007 letter is genuine. Indeed, the Court strongly suspects that the letter was created by or on behalf of Plaintiff for the February 7, 2008 hearing to attempt to corroborate Plaintiff's allegations about Ms. Padden and justify his sanctionable behavior. The Court is not persuaded. In fact, the Court treats this matter very seriously and notes that the submission of a document to the Court that is not genuine is a criminal act. *See* 18 U.S.C. § 401. Although the criminality of Plaintiff's conduct is not before the Court on the Motion for Sanctions, the Court notes that this conduct further justifies its recommendation for sanctions herein.

In addition, this is not the first time a federal court has questioned whether a document submitted by Plaintiff was a forgery. The Court takes judicial notice that Plaintiff was previously convicted of criminal contempt for submitting a document found not to be genuine in an attempt to avoid dismissal of one of his cases. *United States v. Stine*, 70 F.3d 121 (9th Cir. 1995) (table) (unpublished decision), *aff'g* No. 94-mc-00044-PGR (D. Ariz. Nov. 28, 1994). The document submitted by Plaintiff was an alleged facility response to a grievance Plaintiff said he filed, of which the facility had no record. Defendants produced evidence that the alleged response from an individual named "D. Nelson" was not in the facility's file and that no individual named D. Nelson was employed by the facility at the time the document was created. The Ninth Circuit found that "Stine did not have a good faith belief that the exhaustion letter was genuine" and affirmed his conviction for criminal contempt. *Id.*

More recently, a judge of this Court questioned whether multiple documents submitted by Plaintiff were genuine in a case where he is a co-Plaintiff with inmate Oechsle. In Civil Action No. 07-cv-01839-WYD-KLM, Magistrate Judge Boyd N. Boland stated that he doubted the authenticity of inmate Oechsle's signature on a document submitted by Plaintiff [Docket No. 26]. Magistrate Judge Boland reminded Plaintiff that "[s]igning a document for another person, as Mr. Stine is well aware, *see United States v. Stine*, No. 94-mc-00044-PGR (D. Ariz. Nov. 28, 1994), is criminal contempt of court."

**B.    Plaintiff's Other Filings and Conduct**

Plaintiff's other filings and conduct also merit severe sanction. Plaintiff's history of litigation abuses in this case is extensive and egregious. Since the inception of the case in January 2007 until the case was closed in January 2008, Plaintiff filed more than forty pleadings including motions, supplements to motions, letters to the Court, and appeals of adverse decisions to the District Court Judge. The vast majority of Plaintiff's motions were without merit and were denied, but often not until extensive briefing by Defendants and after this Court's consideration of the pleadings. For example:

Motion "Requesting You Mark Mail to Me From Above Cases with 'Special Legal Mail Open in Inmates [sic] Presence'" [Docket No. 11; Filed February 20, 2007], denied on March 20, 2007 [Docket No. 18];

Motion "Reques[ting] the Court Take Corrective Action and Order Warden Wiley [sic] Copy All My Legal Papers Hand-Written or not Bearing Case No. for Filing with Courts" [Docket No. 16; Filed March 15, 2007], denied on June 4, 2007 [Docket No. 34];

"Motion for Protective Order and or Preliminary Injunction with Oral Argument [Against Defendant United States]; Expedited Consideration Requested" [Docket No. 25; Filed May 14, 2007]; "Supplement to Motion for Protective Order and or Preliminary Injunction/Oral Arguments Requested" [Docket No. 28; Filed May 16, 2007]; and "Plaintiff Motions Court to Add Utmost Important Exhibit (A) to Pending Motion for Protective Order and or Preliminary Injunction" [Docket No. 30; Filed May 23, 2007], all denied on June 7, 2007 [Docket No. 40];

"Motion For Protective Order/Evidentiary Hearing Requested" [Docket No. 52; Filed June 26, 2007], denied on June 26, 2007 [Docket No. 55];

Motion Regarding "Urgent Issues" and to Require the Bureau of Prisons to "Make Copies of All Plaintiff's Legal Papers, Bearing Case No. Within (72) Hours of Request" [Docket No. 86; Filed August 1, 2007], denied on September 17, 2007 [Docket No. 125];

Motion and "Request for Order to Discontinue" Copying Plaintiff's Case Manager on Orders [Docket No. 120; Filed September 14, 2007], denied on September 17, 2007 [Docket No. 124]; and

"Motion for the Courts [sic] Assistance and Order of the Court" [Docket No. 145; Filed November 15, 2007], denied on December 21, 2007 [Docket No. 166].[10]

---

[10] In this motion, Plaintiff alleged that Defendants were preventing him from communicating with investigators who were "assisting Plaintiff free of charge." Motion at 1 [Docket No. 145]. Plaintiff listed Emery L. Goad as one such investigator who Defendants had allegedly prevented him from contacting. After the Court denied the motion, Emery L. Goad sent an unsolicited letter [Docket No. 173] to the Court informing it that he was "*not* assisting Mr. Stine in his civil case, captioned above, nor in any other civil cases in which he is involved" (emphasis added). This is another incident which prompts the Court to question Plaintiff's credibility.

In addition, many of Plaintiff's pleadings were filed as letters which requested relief from the Court, but were not titled as motions. On September 24, 2007, the Court *sua sponte* ordered Plaintiff to stop sending letters to the Court and notified Plaintiff that only pleadings titled as motions would be ruled upon [Docket No. 128]. Despite this warning, Plaintiff docketed a letter titled "Judicial Notice of Planned Intentional Misconduct of Defense Counsel and Case Agent Deborah Locke" [Docket No. 157; Filed November 29, 2007], which the Court ordered to be stricken from the record [Docket No. 166]. The Court also notes that Plaintiff filed two additional letters despite the Court's clear warning and prior sanction, which the Court generously treated as motions [Docket Nos. 178 & 187].

Finally, the Court notes the threatening statements made by Plaintiff to Ms. Padden, both on the record and in letters sent to her regarding the present case. *See* Defendants' Exhibits A, C, & D. These statements are indefensible, and the Court finds that they were made solely for the purpose of harassing and abusing Ms. Padden.

## C. The Court's Findings

Considering the information set forth above, the Court finds as follows:

(1)     Plaintiff lied under oath at the February 7, 2008 hearing and at his October 10, 2007 deposition;

(2)     Plaintiff filed false pleadings, including but not limited to, Docket Nos. 44, 113, 122, and 145;

(3)     Plaintiff submitted a forged document as evidence;

(4)     Plaintiff maliciously accused defense counsel of improper conduct;

(5)     Plaintiff threatened and harassed defense counsel;

(6)     Plaintiff maliciously accused a former judicial officer of improper

        conduct; and

(7)     Plaintiff inundated the Court with meritless and frivolous filings.

## III. RECOMMENDATION

In light of the above findings, the Court orders and recommends that several actions be taken in response to the Motion for Sanctions.

First, the Court orders that the pleadings which contain the offensive and unsupportable accusations against Ms. Padden and former Magistrate Judge Schlatter be stricken from the record.[11]  The Court has the inherent authority to strike pleadings from the docket which contain abusive or offensive language and serve no legitimate purpose. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005). Moreover, pursuant to Fed. R. Civ. P. 12(f), the Court has the legal authority to strike pleadings which are impertinent or scandalous in nature.  *See Phillips v. Carey*, 638 F.2d 207, 208 (10th Cir. 1981).

Second, the Court recommends that the final disposition of Plaintiff's case be amended to reflect that it is dismissed with prejudice due to Plaintiff's malicious prosecution pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1915(e)(2)(B)(i).  I further

---

[11] The Court specifically orders that Docket Nos. 44, 113, 122, which contain allegations that Ms. Padden suborned perjury and was involved in a relationship with former Magistrate Judge Schlatter, be stricken.  The Court further orders that the following documents be stricken from the record in Plaintiff's other cases assigned to this Court: Civil Action No. 07-cv-00799-WYD-KLM Docket No. 55; and Civil Action No. 07-cv-01839-WYD-KLM Docket No. 14.  Simultaneous with the filing of this Recommendation and Order, the Court has docketed orders in the above cases to this effect.

recommend that this dismissal be treated as at least Plaintiff's "third strike" pursuant to 28 U.S.C. § 1915(g), such that Plaintiff is precluded from proceeding *in forma pauperis* in any further civil action, except those that meet the high standard of asserting a claim of imminent danger.[12]  *See Raile v. Ortiz*, 237 Fed. Appx. 331 (10th Cir. June 8, 2007) (unpublished decision) (noting that dismissal was at least third strike against plaintiff and finding that he may not proceed *in forma pauperis* in any further civil action).

In *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992), the Tenth Circuit enumerated the factors to be considered when evaluating grounds for dismissal of an action.[13]  The factors are:  "(1) the degree of actual prejudice to the defendant; (2) the

---

[12] The Court notes that Plaintiff already has three strikes against him pursuant to § 1915(g), the most recent one having been imposed on March 4, 2008 in Civil Action No. 08-cv-00298-ZLW by order dismissing Plaintiff's case as frivolous and malicious [Docket No. 7].  The legal basis for the strike is now on appeal to the Tenth Circuit. The other two strikes were issued in Civil Action No. 07-cv-581-PHX-PGR (MHB) (D. Ariz.) where the Court held that Plaintiff's Complaint failed to state a claim, and in Civil Action No. 07-cv-00102-ZLW where the Court held that Plaintiff's Complaint was frivolous and malicious [Docket No. 6].  While this Recommendation for dismissal is technically Plaintiff's fourth strike, given that Plaintiff is appealing what would have been his third strike, this Recommendation for dismissal may effectively serve as his third strike.

[13] The Court notes that the standards for dismissal pursuant to Rule 11, Rule 37, and Rule 41(b) are essentially the same.  *See Mobley v. McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994); *Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *6 (D. Kan. Oct. 4, 2006) (unpublished decision).  Rule 11 authorizes the Court to sanction a party for representations made to the Court which are "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" or for a party's failure to justify his allegations "with evidentiary support."  Fed. R. Civ. P. 11(b)(1) & (3).  Although dismissal as a Rule 11 sanction is not expressly authorized, such a dismissal "is still an appropriate sanction under certain egregious circumstances . . . ."  *Lynn*, 2006 WL 2850273, at *6 (citing *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003)).  Finally, although Plaintiff is proceeding *pro se*, he is not immune from Rule 11 sanctions.  *See, e.g.*, *Clements v. Chapman*, 189 Fed. Appx. 688, 693 (10th Cir. 2006) (unpublished

amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.,* 167 F.R.D. 90, 101 (D. Colo. 1996). "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921). Given that Plaintiff is proceeding *pro se*, the Court must carefully conduct its analysis and consider whether "some sanction other than dismissal [with prejudice is appropriate], so that the party does not unknowingly lose its right of access to the courts . . . ." *Nasious v. Two Unknown BICE Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 920 n.3).

### A.     Prejudice to Defendants

I find that Plaintiff's conduct prejudiced Defendants' ability to defend against the accusations lodged by Plaintiff in his complaint. In this regard, the Court notes that Plaintiff's abuses have caused Defendants to expend unnecessary resources and time to refute the wholly unsupported accusations lodged against their counsel and a former Magistrate Judge of this Court. Defendants' counsel has also been subjected to unwarranted name calling and threats. In addition, the large number of meritless or frivolous pleadings filed in this case, to which Defendants were compelled to respond, further justifies the Court's finding of prejudice. While Defendants' burden is not ongoing

decision).

20

given Plaintiff's voluntary dismissal of his case, such dismissal does not serve as a shield to the Court's imposition of sanctions. *See Cooter*, 496 U.S. at 398.

## B. Interference with the Judicial Process

I find that Plaintiff's conduct in this case has interfered with the judicial process. Just as Defendants are burdened by Plaintiff's abuses so, too, is the Court. The issue here "is respect for the judicial process and the law." *See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003). Plaintiff's unsupported and slanderous accusations and his continued filing of meritless pleadings, despite being warned about such in this case and others, evidences a complete lack of respect for the Court, Defendants, and the judicial process. In addition, Plaintiff's untruthful testimony at the evidentiary hearing and during his deposition, as well as his submission of a forged document, also justify the Court's finding of judicial interference. Moreover, the Court's continual review of Plaintiff's file – even after the case was closed – and the issuance of Orders prompted by Plaintiff's unnecessary filings increases the workload of the Court and interferes with the administration of justice.[14] Indeed, Plaintiff's conduct has required the Court to expend unnecessary effort and time both during the pendency of Plaintiff's case and after its closing. "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document." *See Lynn*, 2006 WL 2850273, at *7.

---

[14] Since Plaintiff's case was voluntarily closed, Plaintiff has filed six pleadings seeking relief from the Court, the majority of which were denied. Indeed, the Court was prompted to caution Plaintiff that given the voluntary dismissal of his case and the fact that further evidence and allegations of new injuries were unwarranted, future filings would be summarily denied [Docket No. 190].

## C.    Culpability of Plaintiff

Plaintiff has, without any reasonable excuse, invented slanderous allegations regarding Ms. Padden and former Magistrate Judge Schlatter and further subjected Ms. Padden to unwarranted threats. "The vileness of [P]laintiff's comments speak for themselves." *Id.* He also has needlessly inundated the Court with filings and letters, even after being warned by this Court and others regarding the same. In regard to Plaintiff's scandalous accusations, the Court provided Plaintiff with an opportunity to support or rescind his allegations at the evidentiary hearing. He did neither. In fact, the Court finds that Plaintiff purposely introduced a document into evidence that he had no good faith basis to believe was genuine. He also testified in contradiction to his earlier deposition testimony and filings on the docket. Moreover, the Court notes that Plaintiff has unsuccessfully attempted to excuse his inability to support his absurd and baseless allegations by accusing prison officials of destroying his documents.

Considering the record before the Court, including the docket, Plaintiff's deposition and hearing testimony, and Defendants' arguments, the Court believes that Plaintiff fabricated statements relating to Ms. Padden and former Magistrate Judge Schlatter in an attempt to avoid prosecuting his case against Ms. Padden after he received several unfavorable rulings. Even after the case was reassigned to this Court, Plaintiff persisted in filing needless motions, accusing Ms. Padden of unprofessional conduct, and filing false pleadings.[15] As a result, I must conclude that Plaintiff's conduct, which was perpetrated

---

[15] As an example, the Court points to Plaintiff's motion where he claimed that he was being prevented from corresponding with his investigator [Docket No. 145], and that same investigator's unsolicited letter to the Court informing it that, contrary to

over a period of several months, was willful, and that he is therefore responsible for his litigation abuses.  *See id.* (noting that plaintiff's continued filing of abusive pleadings evidenced wilfulness).  "This factor virtually compels dismissal."  *Id.*

### D.    Advance Notice of Sanction of Dismissal

The fact that Plaintiff was warned that he risked dismissal for his litigation abuses in several of his other pending cases makes it clear that Plaintiff knew, or reasonably should have known, that his litigation abuses in this case could result in dismissal.  *See id.* (justifying its decision to dismiss, in part, on the various warnings plaintiff received in other cases).  Moreover, the Court finds this factor to be of diminished importance given that Plaintiff has already voluntarily dismissed his own case.  While that dismissal was without prejudice, Plaintiff informed the Court that upon his case's dismissal he discarded his case file, essentially indicating that he has no intention to pursue this case further [Docket No. 174].  Moreover, Plaintiff was on notice from Defendants' Motion for Sanctions that dismissal of his case was a sanction being pursued [Docket No. 139].  The Court also notes that despite warnings given to Plaintiff in his other cases, he has continued to flood the Court with unnecessary filings, indicating to this Court that warnings do little to deter Plaintiff's abusive conduct.

### E.    Efficacy of a Lesser Sanction

Finally, I conclude that no sanction less than dismissal with prejudice would be effective.  Although Plaintiff is proceeding *pro se*, his lack of legal representation does not excuse his abuses here.  *See Garrett*, 425 F.3d at 841 (citing *Theriault v. Silber*, 579 F.2d

---

Plaintiff's assertion, the investigator was *not* working with Plaintiff [Docket No. 173].

302, 303 (5th Cir. 1978)). *See generally Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Warnings to Plaintiff have been resoundingly unsuccessful. In addition, the Court doubts that a monetary sanction would be effective or meaningful to Plaintiff. Further, given that Plaintiff's case is already closed by his own device, a sanction limiting the evidence that Plaintiff may admit going forward would have no practical application. While the Court also orders that several documents filed by Plaintiff be stricken from the record, this sanction does not go far enough to remedy Plaintiff's intolerable and outrageous behavior.

Plaintiff's conduct was malicious and egregious. He proceeded without conscience regarding his unsupported accusations and purposefully tried to damage the careers of Ms. Padden and former Magistrate Judge Schlatter.[16] Moreover, it is entirely clear to the Court that Plaintiff is wholly unconcerned about telling the truth in pleadings and while under oath. Under these circumstances, no lesser sanction would be effective. Dismissal of this case with prejudice is the appropriate result.

## IV. CONCLUSION

---

[16] As noted earlier, Plaintiff's conduct extended far beyond the reaches of this Court's docket. Plaintiff claimed to have made accusations against Ms. Padden and former Magistrate Judge Schlatter with the ABA, the Colorado Bar Association, the DOJ, and the FBI, just to name a few. At the hearing, the Plaintiff also specifically stated that he sent a letter in this regard to U.S. Senator and Presidential candidate Barack Obama claiming Ms. Padden was having "sexual relations" with former Magistrate Judge Schlatter *and* "other judges of Denver Court." *See* Defendants' Exhibit I. The letter, dated September 12, 2007, also purports to attach a letter from a "Denver Police Officer" to support Plaintiff's allegations. At the hearing, Plaintiff confirmed that he attached the alleged eight-page letter from Mr. Fischer to his letter to Senator Obama, the same eight-page letter that he claimed had been confiscated from him more than 20 days earlier. The Court notes that the alleged eight-page letter has never been produced by Plaintiff.

I respectfully RECOMMEND that Defendants' Motion for Sanctions [Docket No. 139] be **GRANTED**, and that Plaintiff's action be **DISMISSED WITH PREJUDICE** pursuant to Fed. R. Civ. P. 11. I also RECOMMEND that the dismissal be justified on the grounds that Plaintiff's action was malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[17] I further RECOMMEND that the dismissal be treated as at least Plaintiff's "third strike" such that he may not proceed *in forma pauperis* in this district or any other, barring a legitimate claim of imminent danger or serious physical injury.

I FURTHER **ORDER** that Docket Nos. 44, 113, and 122 be **STRICKEN** from the record.

I FURTHER **ORDER** that 07-cv-00799-WYD-KLM Docket No. 55 and 07-cv-01839-WYD-KLM Docket No. 14 be **STRICKEN** from the record. Simultaneous with the filing of

---

[17] The Court need only provide a brief basis for its recommendation to dismiss Plaintiff's action as malicious. *See Boag v. MacDougall*, 454 U.S. 364, 365 n.1 (1982). The Court notes that the egregious conduct which justifies the Court's recommendation for dismissal with prejudice as a Rule 11 sanction also fully supports the Court's recommendation to categorize Plaintiff's case as malicious. *See generally Crawford-El v. Britton*, 523 U.S. 574, 600 (1998) (noting that both Rule 11 and § 1915(e) provide the Court with the power to sanction parties or dismiss an action "in extreme cases to protect public officials from undue harassment"); *Newton v. Moten*, 153 F.3d 727 (10th Cir. 1998) (table) (unpublished decision) (noting that appeal of dismissal justified by Rule 11 was malicious pursuant to § 1915(e)); *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990) ("Under the rationale of Rule 11 cases, it is apparent that courts retain jurisdiction to impose a sanction of dismissal with prejudice in cases involving bad-faith misstatements" and noting that dismissal for misstatements is also warranted pursuant to § 1915); *Horton v. Thomas*, No. 96 C 0367, 1996 WL 68013, at *2 (N.D. Ill. Feb. 14, 1996) (unpublished decision) (noting the similarities between the authority provided by Rule 11 and § 1915 and holding that "[a]n indigent who boldly lies to a judge . . . cannot expect to reap the advantages of cost-free filing no matter what the merits of his suit").

this Recommendation and Order, the Court has docketed orders in the above cases to this effect.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED:  March 21, 2008

BY THE COURT:

   /s Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge